IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAMIRO ALONSO MARQUEZ,

                      Plaintiff,

        v.

TEUFEL HOLLY FARMS, INC.,

                   Defendant.

Case No. 3:22-cv-00060-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Alonso Marquez ("Marquez"), an agricultural worker, filed this action against

his former employer, defendant Teufel Holly Farms, Inc. ("Teufel"), on January 11, 2022,

alleging claims for discrimination and retaliation under Title VII of the Civil Rights Act, 42

U.S.C. §§ 2000e to 2000e-17, and Oregon Revised Statutes §§ 659A.030(1)(b), (1)(f). Before the

Court is Teufel's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"),

9 U.S.C. §§ 1-16. Teufel also asks the Court to dismiss this case, or, alternatively, stay

proceedings pending completion of arbitration. For the reasons explained below, the Court

recommends that the district judge deny Teufel's motion to compel arbitration.

///

PAGE 1 – FINDINGS AND RECOMMENDATION

# BACKGROUND[1]

In 2000, Marquez began working as a seasonal farmworker at Teufel's nurseries in Portland and Cornelius, Oregon. (Decl. Ramiro Alonso Marquez Supp. Pl.'s Opp'n Def.'s Mot. Compel Arbitration ("Alonso Decl.") ¶ 1, ECF No. 16; Compl. ¶¶ 10-11, ECF No. 1.) In or around 2010, some of Teufel's other employees, including two supervisors, Alicia Tellez ("Tellez") and Concepcion Kio ("Kio"), began "making unwelcome and inappropriate sexual comments towards [Marquez], touching [Marquez] inappropriately and without his consent, and making sexual gestures around [Marquez] in the workplace." (Compl. ¶¶ 13-16; Alonso Decl. ¶ 3.)

For example, Tellez, a supervisor in Marquez's work area, "touched [Marquez] on his buttocks at work and complimented his body" on several occasions. (Compl. ¶¶ 14, 17.) Other co-workers also touched Marquez on "his chest and made sexual comments about his nipples." (*Id.* ¶ 18.)

In June 2020, consistent with Teufel's supervisors' yearly practice during Marquez's employment, Tellez called Marquez into Teufel's office building to sign employment paperwork before the season began. (Alonso Decl. ¶ 3.) When Marquez arrived, Nick Crunt ("Crunt"), one of Teufel's human resources ("HR") representatives, handed Marquez a roughly twenty-five-page stack of documents, which requested "many signatures or initials," to fill out. (*Id.* ¶ 4.)

---

[1] The following facts are taken from the allegations in Marquez's complaint and the parties' declarations and associated exhibits. *See Tech. Sec. Integration, Inc. v. Phila. Indem. Ins. Co.*, No. 3:14-cv-01895-SB, 2015 WL 4603893, at *1 (D. Or. July 30, 2015) (observing that "for purposes of deciding a motion to compel arbitration under the FAA, a district court may consider documents outside the pleadings" (citing *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-cv-01409, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013))); *see also Tuckman v. JPMorgan Chase Bank, N.A.*, No. 20-11242, 2021 WL 3357953, at *1 n.1 (11th Cir. Aug. 3, 2021) ("[T]he facts here are taken from allegations in [the plaintiff's] complaint and documents attached to the parties' district court filings in support of and in opposition to the motion to compel arbitration. We may look to allegations in the complaint and evidence attached to the arbitration briefing for relevant factual background.").

PAGE 2 – FINDINGS AND RECOMMENDATION

Marquez, who has received only an eighth-grade education in Mexico, had "trouble understanding the documents." (*Id.* ¶ 5.) Crunt could not assist Marquez because Crunt does not speak Spanish, but Kio was aware of Marquez's past difficulties completing paperwork and therefore attempted to assist him. (*Id.*) After Marquez asked Kio "what the documents meant," Kio stated: "They are just papers for the company. You just sign them. You have to sign them." (*Id.* ¶ 6.) Kio proceeded to "quickly flip[] through and point[] to each place where [Marquez] was supposed to place [his] initials or sign [his] name." (*Id.*) When Marquez again asked "what the[] [documents] said," Kio stated: "You just sign it and you're done." (*Id.* ¶ 7.) Feeling that he had no other option, Marquez followed Kio's instructions and signed the documents in "a matter of minutes." (*Id.*)

Marquez does not recall "signing any document with the word 'arbitration' in it or any kind of document that limited [his] rights to complain about problems at work." (*Id.* ¶ 8.) In fact, Marquez had not "heard of arbitration and did not know what it mean[t]" before Teufel filed its motion. (*Id.*) Although he does not recall doing so, the documents Marquez signed included a Spanish version of a Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement"). (*See* Decl. Craig Larimer Supp. Def.'s Mot. Compel Arbitration ("Larimer Decl.") ¶ 2, ECF No. 14; *id.* Ex. 1 at 1-3; *see also id.* Ex. 2 at 1-3, attaching an English version of Teufel's Arbitration Agreement).

The Arbitration Agreement provides that the employee "recognize[s] that differences may arise between [Teufel] and [the employee] during or following [their] employment," such "differences may or may not be related to [the employee's] employment," and the employee "understand[s] and agree[s] that by entering into this Agreement . . . , [the employee] anticipate[s] gaining the benefits of a speedy, impartial dispute-resolution procedure." (*Id.* at 1.)

PAGE 3 – FINDINGS AND RECOMMENDATION

The Arbitration Agreement also provides that the company's and employee's promises to arbitrate their differences "provide consideration for each other," but do not create "any contract of employment, express or implied, . . . [or] alter the 'at-will' status of [the employee's] employment." (*Id.* at 2.)

In terms of its scope, the Arbitration Agreement provides that it does not cover the employee's claims for workers' compensation or unemployment compensation benefits, nor does it cover "claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or the unauthorized disclosure of trade secrets or confidential information, as to which [the employee] understand[s] and agree[s] that the Company may seek and obtain relief from a court of competent jurisdiction." (*Id.* at 1.) With respect to arbitration procedures, the Arbitration Agreement states that (1) except as otherwise provided, any arbitration must be in accordance with Arbitration Services of Portland's ("ASP") "then-current rules," (2) the arbitrator must "apply the substantive law . . . of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted," (3) Oregon Rules of Evidence apply, (4) the arbitrator, not a "federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable," and (5) the arbitration "shall be final and binding upon the parties." (*Id.*)

With respect to arbitration costs and attorney's fees, the Arbitration Agreement provides that (1) the parties "shall equally share the fees and costs of the Arbitrator," (2) "[e]ach party shall pay for its own costs and attorney's fees, if any," (3) "[e]ach party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in an amount and manner

PAGE 4 – FINDINGS AND RECOMMENDATION

determined by the Arbitrator, 10 days before the first day of the hearing," and (4) "if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party." (*Id.* at 2.)

In October 2020, four months after signing the Arbitration Agreement, Marquez suffered a work-related injury and submitted a request for medical leave to Tellez. (Compl. ¶ 20.) Tellez denied Marquez's request, and Marquez later discovered that Tellez told a co-worker she did so because Marquez "had been reporting and making complaints abouts sexual harassment." (*Id.*) In November and December 2020, respectively, a co-worker asked Marquez to "watch pornographic movies and to engage in sexual intercourse," and Marquez informed Crunt about "the sexual harassment, denial of medical leave, and retaliation by [Tellez, Kio,] and others[.]" (*Id.* ¶¶ 22-23.)

Tellez and some of Teufel's other employees continued to harass Marquez between December 2020 and May 2021, and Marquez continued to complain to Teufel's HR department about unabated and "on-going harassment." (*Id.* ¶¶ 24-28.) Teufel's HR representatives informed Marquez that Tellez was "too important to [the] company to be held accountable for sexually harassing [him], even though [they] had uncovered some evidence of harassment." (*Id.* ¶ 26.) Instead, in or around May 2021, Teufel sent Marquez to work in an area away from Tellez and other co-workers who had harassed him. (*Id.* ¶ 27.) Around the same time and in the months that followed, Teufel largely assigned Marquez, who was "under work restrictions for his work-related injury," to work alone and instructed him "not to converse with other workers," and "unnecessarily assigned [him] to work which reduced [his] earnings." (*Id.* ¶¶ 29-30.)

///

In September 2021, Marquez filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment, sex discrimination, and retaliation. (*Id.* ¶ 31.) Teufel assigned Marquez to Tellez's work area the next month, and Marquez experienced further sexual harassment. (*Id.* ¶ 32.) In November 2021, after a co-worker informed Marquez about Tellez's plan to "fire [him] or make sure that [he] would be fired when his injury had improved because he had reported and complained about sexual harassment at work," Teufel terminated Marquez and rejected Marquez's application to return to work. (*Id.* ¶¶ 33-35.)

As a result, Marquez filed this action in January 2022. Teufel's motion to compel arbitration followed in September 2022.

## DISCUSSION

Teufel moves to compel arbitration under the FAA. (*See* Def.'s Mot. Compel Arbitration ("Def.'s Mot.") at 5-6, ECF No. 13, citing 9 U.S.C. § 4, which sets forth the FAA procedure for addressing a motion to compel arbitration.) In seeking dismissal or, alternatively, a stay, Teufel also invokes Federal Rule of Civil Procedure ("Rule") 12(b)(1), "the means by which a defendant raises a defense that the court lacks subject-matter jurisdiction." (Def.'s Mot. at 1, quoting *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citation omitted)).

## I.    APPLICABLE LAW

### A.    Section 2 of the FAA

"Under the FAA, private agreements to arbitrate are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) (quoting 9 U.S.C. § 2). "In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9h Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Assuming both gateway "conditions are met, 'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130).

Notably, however, the aforementioned "gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide [for it]." *Id.* at 999-1000 (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). The Ninth Circuit has explained that "'[s]uch clear and unmistakable evidence of [an] agreement to arbitrate arbitrability might include . . . an express agreement to do so'—*i.e.*, a delegation clause." *Id.* at 1000 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). Importantly, because a district court "'must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator,' the [district] court's initial inquiry focuses on whether the agreement to delegate arbitrability—the delegation clause—is itself unconscionable." *Id.* (quoting *Brennan*, 796 F.3d at 1132).

## B.    Section 4 of the FAA

Section 4 of the FAA sets forth the procedure district courts follow when presented with a motion to compel arbitration. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The district court reviewed this motion to compel arbitration under the [FAA]. . . . The procedure for addressing such a motion is set forth in 9 U.S.C. § 4."). Section 4 provides that "in response to a motion to compel arbitration, the district court must 'hear the parties.'" *Id.* (quoting 9 U.S.C. § 4). If the district "court is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [district] court shall make an order directing

the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Id.* (quoting 9 U.S.C. § 4).

If, however, "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4). The Ninth Circuit has explained that "[i]n applying this language [of the FAA], district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Id.* (citing *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018); and *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)). The Ninth Circuit has also explained that "[t]he summary judgment standard is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980), *abrogated on other grounds by Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 287-88 (3d Cir. 2017)).

Consistent with this understanding, "a [district] court is not authorized to dispose of a motion to compel arbitration [under the FAA] until after [material] factual disputes have been resolved." *Knapke*, 38 F.4th at 831 (quoting *Hansen*, 1 F.4th at 671). If, "[a]t summary judgment, . . . a [district] court 'concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the [district] court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.* (quoting *Hansen*, 1 F.4th at 672). "The district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial." *Hansen*, 1 F.4th at 670. But if the opposing party demands a jury trial, the district "court shall

make an order referring the issue or issues to a jury in the manner provided by the Federal Rules

of Civil Procedure, or may specially call a jury for that purpose." *Id.* (simplified).

## II.    ANALYSIS

### A.    Standard of Review

Teufel's motion seeks dismissal of this case under Rule 12(b)(1) for lack of subject

matter jurisdiction. (*See* Def.'s Mot. at 1.) The authorities discussed herein establish that under

the circumstances present here, the appropriate standard of review is the same used in resolving

summary judgment motions. *See Wolff v. Tomahawk Mfg.*, No. 3:21-cv-00880-SI, 2022 WL

377926, at *4-7 (D. Or. Feb. 8, 2022) ("[E]ven when styled as a motion to dismiss, in a motion

to stay proceedings and/or compel arbitration, the appropriate standard of review for the district

court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ.

P. 56(c).") (simplified), *aff'd*, 2022 WL 17749271 (9th Cir. Dec. 19, 2022). Accordingly, the

Court recommends that the district judge deny Teufel's motion to the extent it seeks dismissal

under Rule 12(b)(1) for lack of subject matter jurisdiction. *See id.* at *7 & n.4 (finding that the

summary judgment standard applied to a motion to compel arbitration, denying the defendant's

motion to dismiss for lack of subject matter jurisdiction, and explaining that because the

defendant "move[d] in the alternative to compel arbitration [under the FAA], the Court [did] not

convert [or need to convert] [the defendant's] motion to dismiss to a motion for summary

judgment").

### B.    Unconscionability

As discussed, the Court must evaluate two gateway issue before deciding whether to

compel arbitration: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether

the agreement encompasses the dispute at issue." *Lim*, 8 F.4th at 999 (simplified). Marquez does

not dispute that the Arbitration Agreement covers his claims. (*See* Pl.'s Opp'n Def.'s Mot.

PAGE 9 – FINDINGS AND RECOMMENDATION

Compel at ("Pl.'s Opp'n") at 12 n.2, ECF No. 15, "assum[ing] that [the] claims are covered by

the . . . Arbitration Agreement"). The relevant question, then, is whether a valid agreement to

arbitrate exists.

### 1.    Unconscionability Generally

The question of validity turns on whether the Arbitration Agreement, and the delegation

clause set forth therein, are unconscionable. (*See* Pl.'s Opp'n at 15, 18, asserting that the

delegation clause and Arbitration Agreement are both procedurally and substantively

unconscionable). The parties agree that unconscionability is governed by Oregon law. (*See*

Def.'s Reply Supp. Mot. Compel Arbitration ("Def.'s Reply") at 2-3, ECF No. 20; Pl.'s Opp'n at

12-13.)

"In assessing a claim of unconscionability, Oregon courts consider both procedural and

substantive unconscionability." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir.

2009) (citing *Vasquez-Lopez v. Beneficial Or., Inc.*, 152 P.3d 940, 948 (Or. Ct. App. 2007)).

Oregon courts have recognized that "both forms of unconscionability 'are relevant, [but] only

substantive unconscionability is absolutely necessary.'" *Id.* (quoting *Vasquez-Lopez*, 152 P.3d at

948); *see also Siggelkow v. Nw. Grp., Inc.*, No. 18-1494-HZ, 2019 WL 294759, at *7 (D. Or.

Jan. 22, 2019) ("[A]fter [the Ninth Circuit's decision in] *Chalk*, the Oregon Supreme Court

decided [*Bagley v. Mt. Bachelor, Inc.*, 340 P.3d 27, 36 n.8 (Or. 2014)] which declined to resolve

the question of whether both substantive and procedural unconscionability were required to

invalidate a contract. Thus, *Bagley* did not change the Ninth Circuit's interpretation of Oregon

law which remains valid and requires only substantive unconscionability to invalidate a

contract.") (simplified).

///

///

"Procedural unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise." *Bagley*, 340 P.3d at 35 (citation omitted). In *Bagley*, the Oregon Supreme explained what amounts to oppression and surprise:

> Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves whether terms were hidden or obscure[d] from the vantage of the party seeking to avoid them. Generally speaking, factors such as ambiguous contract wording and fine print are the hallmarks of surprise. In contrast, the existence of gross inequality of bargaining power, a take-it-or-leave-it bargaining stance, and the fact that a contract involves a consumer transaction, rather than a commercial bargain, can be evidence of oppression.

*Id.* (simplified).

By contrast, substantive unconscionability "generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy." *Id.* at 35-36. "For example, substantive unconscionability has been found where, among other things, all costs were imposed on the party making the claim, after splitting costs equally only for the first day of hearing." *Gist v. ZoAn Mgmt., Inc.*, 473 P.3d 565, 572 (Or. Ct. App. 2020) (citing *Vasquez-Lopez*, 152 P.3d at 951-52). Aside from "these factors, Oregon [courts have] not adopted a formal template," and have recognized that "[e]ach case [must be] decided on its own facts." *Id.* (citing *Vasquez-Lopez*, 152 P.3d at 948).

###            2.        The Delegation Clause

The Court must begin by addressing the delegation clause. *See Lim*, 8 F.4th at 1000 ("[B]ecause a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the court's initial inquiry focuses on whether the agreement to delegate arbitrability—the delegation clause—is itself unconscionable") (simplified). The Arbitration Agreement includes a delegation clause, which provides that the

arbitrator, not this Court, "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable." (Larimer Decl. Ex. 2 at 1.)

Marquez asserts that the delegation clause is unconscionable, that this Court should decide the threshold question of enforceability, and that Teufel waived any argument to the contrary. (Pl.'s Opp'n at 14-15.) Teufel represents that it does not seek enforcement of the delegation clause and instead seeks this Court's determination on the gateway questions of arbitrability (Def.'s Mot. at 4-5; Def.'s Reply at 2 n.1), "a 'choice [that is] inconsistent with the agreement to arbitrate those claims.'" *Garcia v. ISS Facility Servs., Inc.*, 855 F. App'x 338, 340 (9th Cir. 2021) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)).

In light of the foregoing, the Court moves to Marquez's broader unconscionability argument that the Arbitration Agreement as a whole is unconscionable under state law. *Cf. Brockie v. Spencer Gifts*, No. 3:19-cv-00101-SB, 2019 WL 4935616, at *4 (D. Or. July 23, 2019) ("Without a challenge to the delegation provision, the Court cannot reach Brockie's broader unconscionability argument because the Agreement delegates that dispute to the arbitrator."), *findings and recommendation adopted*, 2019 WL 4934944, at *1 (D. Or. Oct. 4, 2019).

### 3.    Substantive Unconscionability

The Court first addresses substantive unconscionability, as the form of unconscionability that is "absolutely necessary." *Chalk*, 560 F.3d at 1092 (quoting *Vasquez-Lopez*, 152 P.3d at 948). Marquez asserts that the Arbitration Agreement's provisions regarding cost-sharing,

discovery limitations, and confidentiality are substantively unconscionable. (Pl.'s Opp'n at 18, 23, 26.)

### a.    Arbitration Costs and Fees

With respect to substantive unconscionability, Marquez leads with the argument that the Arbitration Agreement's cost-sharing provision is substantively unconscionable because it effectively denies him the opportunity to vindicate his rights in the arbitrable forum. (Pl.'s Opp'n at 18.)

The Arbitration Agreement provides that (1) the parties "shall equally share the fees and costs of the Arbitrator," (2) "[e]ach party shall pay for its own costs and attorney's fees, if any," (3) "[e]ach party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in all amount and manner determined by the Arbitrator, 10 days before the first day of the hearing," and (4) "if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party." (Larimer Decl. Ex. 2 at 2.)

Marquez emphasizes that this provision requires "a low-wage employee [like himself to] split costs of arbitration with Teufel, a large business enterprise," and "makes it literally impossible for [him] to proceed in arbitration, either to attack the enforceability of the Arbitration Agreement or to prove his case on the merits." (Pl.'s Opp'n at 19.) Teufel responds that "[t]he arbitrator's ability to shift the fees and costs of arbitration is fatal to Marquez's argument." (Def.'s Reply at 7.) In support, Teufel relies on the Oregon Court of Appeals' decision in *Gist*, 473 P.3d at 573-74, and this Court's decision in *Escobar v. National Maintenance Contractors, LLC*, No. 3:20-cv-01695-SB, 2021 WL 3572652, at *2 (D. Or. Aug. 12, 2021), *aff'd in part, rev'd in part, and remanded*, Nos. 21-35765, 21-35780, 2022 WL 17830001, at *1-2 (9th Cir. Dec. 21, 2022).

PAGE 13 – FINDINGS AND RECOMMENDATION

In *Gist*, the parties' arbitration agreement provided that "each party 'shall pay an equal share of any required administrative fees and arbitration panel compensation,'" and the plaintiff argued that under the applicable ASP rules, "his half of fees for a two-day arbitration could reach $9,375," which was an amount he was "unable to pay or []willing to incur[.]" 473 P.3d at 572-73. The plaintiff, however, did not "deny that arbitration fees may be shifted to the losing parties, [and] insist[ed] [only] that the risk of such costs [wa]s nonetheless a barrier to arbitration." *Id.* at 573.

The Oregon Court of Appeals noted that although the plaintiff "seem[ed] to argue that he must pay the arbitrators' fees before arbitration, . . . the arbitration provision necessarily contemplate[d] fees are assessed after the completion of arbitration when arbitrators' time is tallied and an award is made." *Id.* at 573 n.4. The Oregon Court of Appeals also emphasized that it did "not know that plaintiff will bear any costs in arbitration, because arbitration fees can be shifted to the losing party," and noted "that the written provisions for arbitrators' fees d[id] not impose a predetermined and disproportionate division of fees upon plaintiff." *Id.* at 574. For these and other reasons, the Oregon Court of Appeals held that it could not find that "the cost of arbitration [was] truly a barrier to arbitration or an indication of [substantive] unconscionability." *Id.*

In *Escobar*, on the other hand, the Ninth Circuit recently held that the arbitration agreement's cost-sharing provision was substantively unconscionable. 2022 WL 17830001, at *1. The provision at issue in *Escobar* "provide[d] that the 'expenses of the arbitration . . . shall be born equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.'" *Id.* The Ninth Circuit determined that this Court erred in "concluding that '[t]he risk that [the plaintiffs] *may*

have to pay arbitration expenses d[id] not support a finding of unconscionability," noting that the Court "relied on cases [including *Gist*] in which incomplete factual records required courts to speculate about how a cost-sharing provision would affect a party's ability to access an arbitral forum." *Id.* The Ninth Circuit explained that "[n]o such speculation [was] necessary" because (1) the plaintiffs had "provided undisputed evidence about the costs of arbitration and how those costs would prevent them from bringing their claims," and (2) the defendant "provide[d] no evidence to the contrary." *Id.*

As discussed below, this case is similar to *Escobar*, in that no speculation is necessary as to cost-sharing because Marquez has provided undisputed evidence about the costs of arbitration and how those costs (including deposits) would prevent him from pursuing his claims. Furthermore, unlike *Gist* and contrary to Teufel's argument, the Arbitration Agreement reflects that Marquez must pay an equal share of the arbitration costs and fees and deposit the arbitrator fee before the first day of the hearing, and the arbitrator can shift attorney's fees to the losing party:

> The Company and I shall equally share the fees and costs of the Arbitrator. Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in all amount and manner determined by the Arbitrator, 10 days before the first day of the hearing. Each party shall pay its own costs and attorney's fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

(Larimer Decl. Ex. 2 at 2.)

In arguing that the "risk that Plaintiff may have to initially pay arbitration expenses does not support a finding of unconscionability," Teufel emphasizes that under ASP Rule 33(A), "the award of the arbitrator(s) may require a party to pay or reimburse any other party for all or any portion of 1. [a]ny ASAP filing fee paid or incurred, [or] 2. [a]ny arbitrator compensation or

arbitrator incurred costs paid or incurred through the date of the award[.]" (Def.'s Reply at 8, quoting ASAP Rule 33(A)). Notably, however, Teufel's quote omits the relevant language, "[u]nless the agreement of the parties or a statute provides differently, . . . ."[2] *See* Procedural Rules for ASP Arbitration, https://www.arbserve.com/pages/procedural_rules_14.htm (last visited Dec. 29, 2022). Here the Arbitration Agreement does provide differently, in that it requires the parties to share arbitration expenses equally and is silent with respect to shifting the filing fee or the arbitrators' compensation (but not silent with respect to shifting attorney's fees). (Larimer Decl. Ex. 2 at 2.)

Further, Teufel does not address the important distinction between this case and *Gist*, namely, that the Arbitration Agreement here requires Marquez to deposit funds or post security for his share of the arbitrator's fees before the first arbitration hearing. (*See id.*, "Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in a ll amount and manner determined by the Arbitrator, 10 days before the first day of the hearing."). In contrast, the Court of Appeals in *Gist* based its finding of no unconscionability on the fact that "the arbitration provision necessarily contemplate[d] fees are assessed *after* the completion of arbitration when arbitrators' time is tallied and an award is made." *Gist*, 473 P.3d at 573 n.4.

Where, as here, "an arbitration agreement allocates the fees associated with arbitration— for example, the arbitrator's fee—Oregon courts consider the plaintiff's economic circumstances to determine whether the allocation 'is sufficiently onerous to act as a deterrent to plaintiffs' vindication of their claim.'" *Mercado v. Cardinal Emps. Org., Inc.*, No. 3:21-cv-1224-SI, 2022 WL 309199, at *1 (D. Or. Feb. 2, 2022) (quoting *Vasquez-Lopez*, 152 P.3d at 952). Marquez's

---

[2] The Court takes judicial notice of the ASP's procedural rules. *See, e.g.*, *Harner v. USAA Gen. Indem. Co.*, 590 F. Supp. 3d 1217, 1223 n.2 (S.D. Cal. 2022) (noting that a court may take judicial notice of arbitration rules on its own motion, and therefore taking "judicial notice of Judicate West's Arbitration Rules").

declaration reflects that (1) he currently makes "$17.00 per hour and, on average, earn[s] approximately $2,400 per month," (2) he has less than $400 in his bank accounts, (3) his only other asset is a "2003 Ford F-150 truck that has been driven 200,000 miles," (4) he typically sends about $300 per month to family members in Mexico who need his support, and (5) his average living expenses are "approximately $1,150 each month." (Alonso Decl. ¶¶ 9-10, 13-14.) These facts are significant because Marquez's expert witness, who has experience with ASP rules and arbitration proceedings, opines that: (1) "arbitrating the matter at hand could reasonably be expected to cost [Marquez] $18,000 to $20,000, including the $600 filing fee and half of the arbitrator's fee," and (2) it is "reasonable to expect that [requiring Marquez] to pay such an amount in a lump sum would make arbitration prohibitive" given his financial resources. (Decl. Dana Sullivan Supp. Pl.'s Opp'n Def.'s Mot. Compel Arbitration ("Sullivan Decl.") ¶ 20, ECF No. 18.)

As the Oregon Court of Appeals observed in *Vasquez-Lopez,* "[d]enial of access to an arbitral forum occurs when the cost of arbitration is large in absolute terms, . . . [and] when that cost is significantly larger than the cost of a trial[.]" 152 P.3d at 952. As in *Vasquez-Lopez,* the Arbitration Agreement here allocates the costs of arbitration, and Marquez has demonstrated that his costs of arbitration are high in an absolute sense and in comparison to trial. *See id.* ("That is because, regardless of whether filing fees are relatively equal in court and arbitration, the fact remains that most of the cost involved in an arbitration will be the arbitrator's fees; in court, by contrast, neither party has to pay for the judge."). For these reasons and those discussed further below, the Court finds that the Arbitration Agreement's cost-sharing provision is substantively unconscionable because it is sufficiently onerous to act as a deterrent to Marquez's vindication of his claims in the arbitral forum. *Cf. Lim,* 8 F.4th at 1003 (applying California law and holding

that "the requirement that [the plaintiff] pay half of the arbitration fees, including with respect to the gateway issue of arbitrability, impermissibly imposes a type of expense that [the plaintiff] would not be required to bear if he . . . were free to bring the action in court") (simplified).

### b.      Discovery Limitations

Marquez also asserts that the Arbitration Agreement's discovery provision is substantively unconscionable. (Pl.'s Opp'n at 23.) The discovery provision states that: (1) "[e]ach party shall have the right to take the depositions of each other and any expert witness designated by another party," (2) "[e]ach party also shall have the right to make requests for production of documents to any party," (3) "[t]he subpoena right specified below shall be applicable to discovery pursuant to this paragraph," and (4) "[a]dditional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need." (Larimer Decl. Ex. 2 at 1.)

The Supreme Court has recognized that "[a]lthough [arbitration] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F. Supp. 3d 1143, 1150 (D. Or. 2020) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). Consistent with this understanding and decisions from this district, the district court in *Tapley* held that the parties' arbitration agreement's discovery provision was not substantively unconscionable because the "discovery limitations appl[ied] to both parties and [could] be modified for good cause[.]" *Id.*

So too here. Marquez acknowledges that the arbitrator may allow discovery and that the discovery limitations apply equally to Teufel, but maintains that the discovery provision is nevertheless substantively unconscionable because it limits him in "identifying or accessing

people who work for the employer and may have took part in the employment decision[s] [at issue]." (Pl.'s Opp'n at 25) (simplified). Notably, however, the *Tapley* court found that a discovery provision limiting the parties to three depositions was not substantively unconscionable (*see* 448 F. Supp. 3d at 1151), and here the parties may depose each other and any expert witness and request that the arbitrator allow them to depose additional fact witnesses.

Marquez also relies on *Hulett v. Capitol Auto Group, Inc.*, No. 07-6151-AA, 2007 WL 3232283, at *5 (D. Or. Oct. 29, 2007). (*See* Pl.'s Opp'n at 24-25.) However, unlike here, the arbitration agreement in *Hulett* provided that "[a]dditional discovery may be authorized by the Arbitrator, except that other forms of written discovery (i.e. interrogatories and requests for admission) must be mutually agreed to by you and Capitol." 2007 WL 3232283, at *5. In other words, some discovery limitations were effectively "left to the discretion of the defendant, the employer," which meant that "an important avenue of discovery [was] potentially unavailable to plaintiff and [was] not subject to review by a disinterested third party." *Id.* The Arbitration Agreement here does not include any similar discovery limitation left to Teufel's unilateral discretion.

For these reasons, the Court finds that Marquez has not demonstrated that the Arbitration Agreement's discovery provision is substantively unconscionable.

### c.    Confidentiality

Finally, Marquez argues that the Arbitration Agreement's confidentiality clause is substantively unconscionable. (Pl.'s Opp'n at 26.) This clause provides that "[t]he results of the arbitration, unless otherwise agreed by the parties or ordered by the Arbitrator on motion, are confidential and may not be reported by any news agency or legal publisher or service." (Larimer Decl. Ex. 2 at 2.)

///

PAGE 19 – FINDINGS AND RECOMMENDATION

Marquez asserts that this provision is unconscionable because it favors so-called "repeat players" like Teufel, which "requires most or all of its employees to sign" the Arbitration Agreement and now "has nearly 30 years' experience with [the ASP] procedures and arbitrators." (Pl.'s Opp'n at 26-27.) As the Oregon Court of Appeals recognized in rejecting a similar argument, such a claim "fails to take into consideration the fact that the nonconfidential information, while not officially reported, is widely available to plaintiffs' lawyers through informal networks and organizations," and thus "any advantage conferred on repeat players and their counsel is marginal and . . . is roughly offset by the advantage that privacy about [sensitive personal] affairs confers on plaintiffs." *Vasquez-Lopez,* 152 P.3d at 953. Furthermore, it appears that when presented with an appropriate motion, the arbitrator may order disclosure of the results of the arbitration. (*See* Larimer Decl. Ex. 2 at 2, listing an "order[] by the Arbitrator on motion" as an exception to the clause stating that the "results of the arbitration . . . are confidential").

In light of the foregoing and consistent with the reasoning in *Vasquez-Lopez*, the Court concludes that the Arbitration Agreement's confidentiality provision is not substantively unconscionable.

### 4.   Severability

Teufel argues that even if the Court finds that a provision of the Arbitration Agreement is unconscionable, it should sever any offending provision and enforce the agreement to arbitrate. (Def.'s Reply at 12-13.) The Court disagrees.

There is no dispute that the Arbitration Agreement includes a "construction" clause. Specifically, the Arbitration Agreement provides that "[i]f any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement." (Larimer Decl. Ex. 2 at 2.)

///

PAGE 20 – FINDINGS AND RECOMMENDATION

The district court's decision in *Johnson v. Clackamas County*, No. 08-cv-1379-BR, 2009 WL 10694707, at *1 (D. Or. Sept. 9, 2009), is instructive on the issue of severability here. *Johnson* involved an employment agreement that included an arbitration clause. *Id.* In reviewing the employer's motion to compel pursuant to the FAA, the district court addressed whether the arbitration clause was unconscionable and, therefore, invalid under Oregon law. *Id.* at *3. The district court concluded that the arbitration clause was not procedurally unconscionable. *Id.* at *4. With respect to substantive unconscionability, the district court held that "the possibility discovery might be limited by the arbitrator d[id] not render the arbitration clause unconscionable." *Id.* at *5. The district court, however, held that the arbitration agreement's cost-sharing clause was substantively unconscionable:

> Here the arbitration clause provides each party will bear its own costs and attorneys' fees and 'be responsible for the arbitrator's and any separate arbitration and recording fees' unless the employee . . . is the prevailing party, in which case the [employer] is required to pay all of the arbitrator's fees, but [the employee] must still pay her own attorneys' fees. According to USAM Rules, its arbitrators charge on an hourly basis for the time they spend on the matter, and each party is responsible under USAM Rules for paying their own share of the arbitrator's fee unless they agree otherwise. There is no such other agreement between these parties.
>
> . . . .
>
> The Court agrees Johnson did not provide any evidence that an arbitration in this case would cost $40,000. Nonetheless, even in the $10,000 range conceded by the County's counsel, the Court concludes that requiring Johnson to pay costs of arbitration even in this range unreasonably favors the County who had superior bargaining power in the formation of the Employment Agreement that mandates arbitration. Accordingly, the Court concludes Johnson has made an adequate showing that this provision of the arbitration clause is sufficiently burdensome to impact the ability of this individual plaintiff to bring an action against her former employer to vindicate her rights. Thus, the Court finds this provision of the arbitration clause is unconscionable.
>
> . . . .
>
> [As to attorney's fees], even though USAM Rule 35 provides the 'applicable law' will govern the award, it also limits the award to that which is

allowed by the arbitration clause. Thus, neither the arbitration clause nor the
USAM Rules provide for fee-shifting even if Johnson is successful on her claims
in arbitration.

The Court concludes that the arbitration clause [also] impermissibly
attempts to forfeit important statutorily-mandated rights or benefits by failing to
include a fee-shifting provision as provided under Oregon Revised Statute
§ 659A.885 and 42 U.S.C. § 2000e-5(k). Accordingly, that part of the arbitration
clause is also unconscionable in the circumstances of this case.

In summary, the Court concludes on this record that the arbitration clause
provisions requiring the parties each to pay one-half of the arbitration fees and to
bear their own costs and attorneys' fees are substantively unconscionable.

*Id.* at \*6-7 (simplified).

Ultimately, the district court found that the unconscionable provisions were "not
severable from the remainder of the arbitration clause, and, therefore, the entire arbitration clause
[was] unenforceable." *Id.* at \*8. In so finding, the district court explained that "[a]lthough the
parties [had] evidenced an intent to sever unenforceable provisions and to leave the remainder of
the arbitration clause intact," and although the defendant "offered to pay the arbitrator's fee and
any other filing or procedural fees regardless of the outcome of the proceeding and . . . agreed
the arbitrator may award attorneys' fees to [the plaintiff] if appropriate," the defendant could not
"rehabilitate an unconscionable contract term long after the contract has been in effect and a
dispute as to that term has arisen." *Id.* (simplified). Nor could the district court "rewrite the
Employment Agreement to include the [defendant's] proposed modification." *Id.* The district
court therefore held that the unconscionable provisions were not severable from the remainder of
the agreement and denied the defendant's motion to compel arbitration. *Id.*

This case is similar to *Johnson*. Whereas the employment agreement in *Johnson* provided
that the employee could potentially recover arbitrator costs and fees but did not allow for the
shifting of attorney's fees, here the Arbitration Agreement provides that Marquez could
potentially recover his attorney's fees but does not allow for the shifting of arbitration costs and

PAGE 22 – FINDINGS AND RECOMMENDATION

fees. (*See* Larimer Decl. Ex. 2 at 2, "*The Company and I shall equally share the fees and costs of the Arbitrator*. Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in all amount and manner determined by the Arbitrator, 10 days before the first day of the hearing. *Each party shall pay its own costs* and attorney's fees, if any. However, if any party prevails on a statutory claim which affords the *prevailing party attorney's fees*, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the *prevailing party*.") (emphasis added).

As in *Johnson*, if the Court were to sever the unconscionable cost provision, it would create a void as to which party will bear the costs of arbitration. During oral argument, Teufel suggested that this void would be filled by the ASP rules—namely, ASP Rule 33(A), which provides that unless the parties' agreement or a statute provides differently, the arbitrator may require a party to reimburse the other party for all, or any portion of, among other things, "any arbitrator compensation or arbitrator incurred costs paid or incurred through the date of the award[.]" ASP Rule 33(A)(1).

The Court finds that ASP Rule 33(A) fails adequately to address Marquez's concerns about the costs of arbitration, namely the fact that Marquez would still be required to post an equal share of the costs of arbitration and deposit the arbitrator's fee prior to the first day of the hearing. In an attempt to allay the Court's concerns, Teufel directed the Court to ASP Rule 15(F), which provides that "[i]f a party . . . has indicated its inability to timely pay, part or all of an arbitrator's compensation deposit, the other party or parties may advance such compensation deposit in order to continue the arbitration, and the advancing party shall be entitled to an adjusting offset or reimbursement in the award pursuant to Rule 32 (if the parties have not otherwise adjusted the matter between themselves)." ASP Rule 15(F). Teufel represented that it

would be willing to advance Marquez's portion of the arbitrator's compensation to continue the arbitration.

Teufel's proposal to sever the offending clause, rely on default ASP Rules, and advance Marquez's required deposits does not solve the problem of the onerous costs of arbitration for Marquez here. Even if Teufel follows through on its promise to front Marquez's portion of the filing fee and arbitrator's fees, Marquez would still be responsible for those fees—estimated to total between $18,000 to $20,000 (*see* Sullivan Decl. ¶ 20)—if Teufel prevails in arbitration, which would reasonably serve as a deterrent for an employee in Marquez's position to proceeding with his claims. *See Escobar*, 2022 WL 17830001, at *1 ("In Oregon and Washington, a cost-sharing provision is unconscionable if it denies parties the opportunity to vindicate their rights because of their inability to pay." (citing, *inter alia*, *Vasquez-Lopez*, 152 P.3d at 951-52)). In comparison, Marquez was required to pay a $402 filing fee in this court, but win or lose, he would never be required to pay the compensation of his trial judge.

Further, as in *Johnson*, the Court cannot rehabilitate an unconscionable contract term or rewrite the Arbitration Agreement to require Teufel to post or pay Marquez's deposit. In addition, the Court cannot endorse Teufel's reliance on ASP Rule 15(F) as a solution to an indigent employee's inability to pay the required deposits, because Rule 15(F) grants Teufel the ultimate authority and discretion to determine if an indigent employee may proceed in the arbitration forum by electing whether or not to advance the employee's deposit. (*See* ASP Rule 15(F), "If a party . . . has indicated its inability to timely pay, part or all of an arbitrator's compensation deposit, the other party or parties *may* advance such compensation deposit in order to continue the arbitration, and the advancing party shall be entitled to an adjusting offset or reimbursement in the award pursuant to Rule 32 (if the parties have not otherwise adjusted the

matter between themselves).") (emphasis added); *cf. Hulett*, 2007 WL 3232283, at *5 (finding an arbitration provision was substantively unconscionable because it "left [the matter] to the discretion of . . . the employer").

Under these circumstances, the Court finds that the unconscionable cost-sharing provision is not severable from the remainder of the Arbitration Agreement, and therefore the entire Arbitration Agreement is unenforceable. *See Escobar*, 2022 WL 17830001, at *2 ("[W]e cannot sever an unconscionable provision if doing so would require us to rewrite the contract. Severing the cost-sharing provision would require exactly that because, in the absence of the provision, it would fall to us to decide who should bear the costs of arbitration. . . . We therefore conclude that the entire arbitration agreement is substantively unconscionable and unenforceable, so we need not reach the remaining issues briefed by the parties" (citing *Vasquez-Lopez*, 152 P.3d at 953)). Accordingly, the Court recommends that the district judge deny Teufel's motion to compel arbitration.

///

///

///

///

///

///

///

///

///

///

PAGE 25 – FINDINGS AND RECOMMENDATION

**CONCLUSION**

For the reasons stated, the Court recommends that the district judge DENY Teufel's

motion to compel arbitration (ECF No. 13).

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if

any, are due within fourteen (14) days. If no objections are filed, the Findings and

Recommendation will go under advisement on that date. If objections are filed, a response is due

within fourteen (14) days. When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 29th day of December, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge